UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELTA TECHNOLOGY DEVELOPMENT LLC, | ) ) ) ) Civil Action No. 24-cv-2406 |
| Plaintiff, | ) |
| v. | ) ) |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | ) Presiding Judge: Hon. Sara L. Ellis ) Magistrate Judge: Hon. Young B. Kim ) ) ) ) ) ) |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISSOLVE OR MODIFY PRELIMINARY INJUNCTION**

Plaintiff Delta Technology Development LLC ("Delta" or "Plaintiff") by and through its Counsel, files its response in opposition to Defendants' Motion to Dissolve or Modify Preliminary Injunction (the "Motion").

**BACKGROUND AND SUMMARY**

Plaintiff is the rightful owner of a number of copyrighted designs including a series of 2-D and 3-D Christmas Truck designs. ECF No. 6. Plaintiff created these designs in early 2022.[1] Through its authorized agent in China, Shanghai Chengchunjun E-commerce Co., Ltd. (上海成淳君电子商务有限公司), Plaintiff reached out to Guangzhou Channal Inflatable Co., Ltd.(广州全优能气模有限公司), the company operating both infringing websites as identified in this

---

[1] Plaintiff's copyright certificates incorrectly stated the year of completion as 2023. Plaintiff will seek to make corrections through the Copyright Office.

1

Complaint, to manufacture inflatable toy products. *See* Tian Wang Declaration; *see also* Exhibit 1 for the original service invoice; Motion to Dissolve or Modify Preliminary Injunction, Dkt. 40 – 1 at 3 (Defendant's admission to this fact). The parties failed to reach a business deal. However, without consent of Plaintiff, Defendants used Plaintiff's copyrighted design to manufacture infringing products.

Defendants' main argument to dissolve the Preliminary Injunction is that Plaintiff's ownership of the copyright is questionable because Defendants obtained the Copyrighted materials from an entity named Shanghai Chengchunjun E-commerce Co., Ltd. (上海成淳君电子商务有限公司) ("Chengchunjun") in 2022 while Plaintiff's Copyright Certificates stated the year of completion incorrectly as 2023. Dkt 40-1 at 3. This argument is doomed to fail because 1) Plaintiff's error contained in the Copyright Certificates do not invalidate Plaintiff's Copyrights, 2) Defendants admitted that they received the Copyrighted materials from Chengchunjun, through a business negotiation, *id*. at 3, 3) Defendants understood that Chengchunjun did not decide to continue the business deal, but Defendants still decided to sell the infringing products, Dkt. 40-2 ¶ 9, and 4) Defendants' products are substantially the same as Plaintiff's Copyrighted works. Dkt 40-1 at 3.

## DISCUSSION

### A. Defendants Misstated the Standard for Vacating a Preliminary Injunction.

In their Motion, Defendants cited the standard for granting a preliminary injunction, and used the factors as the basis around which to structure their arguments. Dkt 40-1 at 2. Defendants also placed the burden of proof on Plaintiff to show that the Court's prior granting of a Preliminary Injunction in Plaintiff's favor is justified. *Id.* Defendants characterization of the standard and

2

burden is incorrect. Defendants should have stated the test for dissolving a preliminary injunction, placing the burden on themselves rather than on Plaintiff.

The standard for dissolving a preliminary injunction is nearly the same as the standard for granting one, however "the court [also] asks whether 'the expected cost of dissolving the injunction—considering the probability that dissolution would be erroneous because the plaintiff really is entitled to injunctive relief, and the consequences of such an error—[is] greater or less than the expected cost of not dissolving the injunction.' *Aidong Zou v. Entities*, No. 23 C 16600 at *4, 2024 U.S. Dist. LEXIS 40565 (N.D. Ill. Mar. 8, 2024) (citing *Centurion Reinsurance Co. v. Singer,* 810 F.2d 140 (7th Cir. 1987)). A party seeking to dissolve a preliminary injunction typically bears the burden of negating the conclusions supporting the issuance of the injunction. *See, e.g.*, *Doe 2 v. Shanahan*, 755 F. App'x 19, 22 (D.C. Cir. 2019). However, the burden of proof does not necessarily fall on the movant when the "temporary injunction [was] issued under circumstances resembling a temporary restraining order"; in that case, the burden of proof may lie with the party seeking to maintain the preliminary injunction. *Jiaxing Zichi Trade Co. v. Yang*, No. 21-cv-973 at Note 3, 2021 U.S. Dist. LEXIS 190436 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291). Although the current Injunction resembles a temporary restraining order – and was converted from one – Plaintiff, unlike the plaintiff in *Jiaxing*, does not cede that the burden of proof rests on themselves. Instead, the burden remains on defendant to show that the Preliminary Injunction was wrongfully granted, or that Plaintiff bears the burden of proving that it was justified. Defendant also failed to directly address whether the expected cost of dissolving the Injunction is greater or less than the expected cost of not dissolving the injunction.

**B. Even Using Defendant's Incorrect Standard, the Factors Weigh in Plaintiff's Favor.**

Although Defendants invoke an incorrect standard, their request to dissolve the Injunction still fails under their test. Defendants' standard for dissolving the Preliminary Injunction places the burden on Plaintiff to prove the factors necessitating an injunction, each of which was proven by Plaintiff sufficiently enough for this Court to grant the Injunction. Accordingly, Plaintiff still satisfies each factor, demonstrating the need for the Preliminary Injunction to remain in place.

**1. Plaintiff has Established Ownership of the VAu001513589 and VAu001514819 Copyrights, Despite Harmlessly Misstating the Date of Creation in its Application.**

To bring suit for copyright infringement under U.S. law, 17 U.S.C. § 411(a) states in part:

"(a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights…"

"(b) (1) A certificate of registration satisfies the requirements of this section and section 412 [17 USCS § 412], regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

Plaintiff did in fact create the works in 2022, and simply made an error in its application to the Copyright Office. Plaintiff was not aware of the inaccurate information when it applied for the copyright registration. The inaccuracy of the information is a simple human error that would not have caused the Register of the Copyrights to refuse registration. Plaintiff will file a correction with the Copyright Office to fix this harmless error. The underlying error does not invalidate or otherwise affect the rights or privileges granted by the Copyright and is specifically allowed for correction by the Copyright Office:

> A supplementary registration is a special type of registration that may be used "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d).

*See Compendium of U.S. Copyright Office Practices,* Chapter 1800, Section 1802.

Despite Defendants' accusations, Plaintiff has sufficiently alleged "facts setting forth (1) ownership of a valid copyright in a work and (2) the copying of elements of the work that are original." *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012); Docket 40-1 at 3. Defendants claim that Plaintiff is not the true owner of the asserted copyrights VAu001513589 and VAu001514819, because Defendants received a design drawing from an entity named Shanghai Chengchunjun E-commerce Co., Ltd. (上海成淳君电子商务有限公司).

Dkt. 40-1 at 3. Chengchunjun is Plaintiff's business partner that assists Plaintiff in certain business deals in China and is not a parent or affiliate for the purposes of disclosure under Local Rule 3.2. *See* Tian Wang declaration. In this case, Plaintiff authorized Chengchunjun to reach out to Defendants on its behalf and presented Defendant with the copyrighted images for Defendants to manufacture. *See* Tian Wang declaration. Additionally, Defendants admitted that they received the drawings in 2022. Dkt. 40-1 at 3. In fact, Plaintiff provided the service invoice with the copyright images on it, which was provided to Defendants on March 8, 2022. *See* Exhibit 1.

5

Accordingly, Plaintiff can and has established ownership of the Copyrights, and has demonstrated copying of their elements through its prior Exhibits submitted to the court. *See* Docket No. 7.

### 2. Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

As stated above, the burden of proof rests on Defendants to show that Plaintiff will not suffer irreparable harm if the Preliminary Injunction is dissolved, however Plaintiff has already proven that it will:

"The Seventh Circuit has held that irreparable harm is presumed in copyright infringement cases. *Atari*, 672 F.2d at 620. Indeed, in recognition of the irreparable nature of the harm caused by copyright infringement and the aim of the copyright laws to prevent such commercial harm not compensable monetarily, the Copyright Act expressly provides for injunctive relief in order to address infringement. *See* 17 U.S.C. § 502; *HarperCollins Publishers LLC v. Gawker Media LLC*, 721 F. Supp. 2d 303, 307 (S.D.N.Y. 2010). Where a copyright owner has expended significant resources promoting products embodying its copyrights, losses resulting from infringement of such copyrights constitutes irreparable harm. *HarperCollins Publishers LLC*, 721 F. Supp. 2d at 307; *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir. 1997). A copyright owner's "invest[ment] of substantial time, effort and money into creating the [copyright-protected work]" coupled with the likely inability to realize the return on such investment due to infringement of the copyright, supports a finding of irreparable harm. *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 542 (D.N.J. 1999). The sort of irreparable harm resulting from copyright infringement includes loss of exclusivity and damage to the copyright owner's business reputation. *See Mercis B.V. v. P'ships & Unincorporated Ass'ns Identified on Sch. "A,"* Case No. 1:21-cv-00872, 2021 U.S. Dist. Lexis 197726, at *3 (N.D. Ill. Mar. 19, 2021); *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111 (N.D. Ill. 2005)."

Docket No. 12 at 7-8.

"Defendants' unauthorized reproduction and public display of Plaintiff's Copyrighted Works will likely irreparably injure Plaintiff at least through loss of the exclusivity that Plaintiff is entitled to for its Copyrighted Marketing Material under the Copyright Act. Plaintiff has invested substantial time, money, and effort creating and promoting Plaintiff's Copyrighted Works. (Decl. of Tico Zhan at ¶ 10). The extent of the harm to Plaintiff's business reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus requiring immediate cessation Defendants' copyright infringement. (*Id.* ¶ 11). Such harm, therefore, warrants an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill constituted irreparable harm for which plaintiff had no adequate remedy at law)."

Docket No. 24 at 5.

Further, Plaintiff has adequately demonstrated irreparable harm "by pointing towards potential harm to goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright." *Antsy Labs, LLC v. Individuals*, No. 21 C 3289 at *8, 2022 U.S. Dist. LEXIS 212406 (N.D. Ill. Nov. 23, 2022).

Defendants' only counter argument to Plaintiff's well-established harm is that Plaintiff has provided no proof that Defendants' goods are substandard, or that Plaintiff's reputation has been harmed, or else that consumers have been tricked into believing they are purchasing products offered by Plaintiff. Defendants seem to confuse the Court's prior findings in invoking these issues; substandard goods and harm to Plaintiff's reputation are *presumed* aspects of the irreparable harm caused by counterfeiting, not factors that prove counterfeiting. "Irreparable harm is presumed where copyright infringement has been shown." *Dun & Bradstreet, Inc. v. Walter*, No. 90 C 5577, 1990 U.S. Dist. LEXIS 15446, at *1 (N.D. Ill. Oct. 29, 1990); *see also QSRSoft, Inc. v. Rest. Tech., Inc.,* No. 06 C 2734, 2006 U.S. Dist. LEXIS 76120, at *1 (N.D. Ill. Oct. 19, 2006) ("Irreparable injury may be *presumed* upon the showing of a prima facie case of copyright infringement") (emphasis added); *Mercis B.V. v. P'ships & Unincorporated Ass'ns Identified on Sch. "A,"* Case No. 1:21-cv-00872, 2021 U.S. Dist. Lexis 197726, at *3 (N.D. Ill. Mar. 19, 2021) (finding that Defendant's continued and unauthorized counterfeiting *resulted in* diminished goodwill and damage to reputation) (emphasis added); *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111 (N.D. Ill. 2005) (finding that availability of counterfeit copies *leads to* unquantifiable damage to plaintiff's goodwill) (emphasis added). Additionally, consumer confusion as to source or origin is a factor in trademark cases, not copyrights ones. Copyright cases are instead concerned with direct copying of Plaintiff's products which has been adequately demonstrated here. Plaintiff

7

has established the need for injunction to avoid irreparable harm, and Defendants have made no argument to rebut that finding.

3. **The Balance of Harms Tips in Plaintiff's Favor.**

Plaintiff has shown that it is likely to succeed on the merits based on Defendants willful and continued infringement of Plaintiff's valid copyrights. Defendants admitted that they were aware of the copyrighted works since at least February 2022. Docket No. 40-1 at 3. Defendants knowingly and willfully created, marketed, and sold products that directly infringed on Plaintiff's copyrights. Defendants now claim that validly entered court orders resulting from their willful sale of infringing products have caused "significant hardships" due to an inability to freely run their business. The Defendants' stance is ludicrous; being punished for knowingly violating someone's rights does not outweigh the harm caused by the violation. Dissolving the entered Injunction would allow Defendants to continue to cause irreparable harm to Plaintiff through selling infringing products, and leave Plaintiff with no recourse once Defendants have moved their funds to locations not subject to the jurisdiction of the Court. The balance of harms tips strongly in favor of Plaintiff.

4. **Public Interest is Served by the Injunction**

Despite Defendants claims that their selling infringing products is simply "competition", Docket No. 40-1 at 5, this practice is exactly what copyrights laws were created to prevent. Removing counterfeit goods from the stream of commerce serves the public interest by ensuring consumers are able to purchase the goods they desire, rather than accidently purchasing an alternative or inferior product. Additionally, Defendants' stores are not "shut down", *id.*, as Defendants can still sell other, non-infringing goods as they could before the Injunction was entered. Accordingly, all factors weigh in favor of Plaintiff and against dissolving the Injunction.

**C. Defendant's Request for Reduced Asset Restraint is Prejudicial to Plaintiff and Based Only on Self-Serving, Inadmissible, and Unauthenticated Evidence in Violation Federal Evidence Rules.**

Defendant BIGJOYS should not be granted a reduced asset restraint, as its assets may be necessary to pay the damages awarded to Plaintiff. Defendants BIGJOYS and Seasonblows.com are allegedly owned and operated by Leilin Liu, who would be liable for all damages awarded against both storefronts. Docket No. 40-2 at ¶ 3. After entry of the Temporary Restraining Order, Plaintiff served the Order on to third-parties such as Amazon and Shopify.com along with a request to disclose financial information about the Defendants. Amazon complied; however, Shopify.com does not track sales by product. Defendant Seasonblows.com has not provided Plaintiff with complete or detailed sales information. Accordingly, Plaintiff has no way of determining the number of sales and amount of profit that Seasonblows.com accumulated from the Infringing Products. In fact, Defendants at one time admitted that it made over $7 million infringing sales on Amazon and $11,518.29 on its Shopify website. *See* Exhibit 2. It is highly possible and can be inferred that Defendants have made infringing sales not covered by Amazon's disclosure as other infringing products might vary in sizes and have different ASINs (Amazon Standard Identification Number), which will not be reported by Amazon through the ASINs obtained by Plaintiff. Even though Defendants later amended its response. This inconsistence casts doubt on the credibility of the Declarant Leilin Liu, who is the owner and operator of the stores, and who has reason and incentive to provide the false declaration in support of Defendants' current motion.

Plaintiff objects to Defendants' introduction of Exhibit B as hearsay as it is an out-of-court statement offered to prove the truth of what it asserts. Defendants' Exhibit B showing the number of infringing sales is also questionable as Defendants failed to describe how Liu conducted the

9

search that came up with a sales record of 0 product on Seasonblows.com. Such record is held solely within Defendants control, which is not audited by any independent third party.

Plaintiff further objects to Defendants' introduction of Exhibit B and Exhibit C because they are inadmissible for being in foreign languages and thus not authenticated.

Documents in a foreign language are widely considered not properly authenticated. *See Lopez-Carrasquillo v. Rubianes,* 230 F.3d 409, 413 (1st Cir. 2000); *Trapaga v. Cent. States Joint Bd. Local 10*, 2007 U.S. Dist. LEXIS 23438, 2007 WL 1017855 at *7 (N.D. Ill. 2007); *United States v. One 1988 Chevrolet Half-Ton Pickup Truck*, 357 F.Supp.2d 1321, 1329 (S.D. Ala. 2005) ("[I]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.").

*MDG Int'l, Inc. v. Australian Gold, Inc.,* 606 F. Supp. 2d 926, 939 n.21 (S.D. Ind. 2009)

Defendant BIGJOYS's request is based on unsubstantiated and self-serving evidence. Defendant BIGJOY's basis for reducing the Restrained Assets is their claim that their profits from selling Infringing Products is only $4,000. This number comes solely from the Declaration of Leilin Liu, the alleged owner of BIGJOYS and Seasonblows.com, without any explanation whatsoever how Defendants arrived at this arbitrary number. Defendants have ample time to produce corroborating evidence and detailed calculation for the $4,000 profits but still failed to produce any evidence other than Liu's self-serving declaration. The evidence of sales and profits submitted along with the Declaration of Lielin Liu have not been verified or authenticated. *See* Docket No. 40-2. The Declaration and corresponding evidence are accordingly self-serving and unreliable to prove the actual amount of sales and profits generated by the Infringing Products. Accordingly, Defendant BIGJOYS should be denied its requested reduction in asset restraint until the amount of damages can be determined.

Defendant also failed to disclose all its channels that sold inflatable toys in contempt of the restraining order. The two stores that Plaintiff identified are just tip of a gigantic iceberg.

Defendant runs a complicated criminal network where Defendant copied and mass manufactured infringing products. Plaintiff has found at least 12 other websites that Defendant operates but failed to disclose to Plaintiff. By failing to produce information related to these webstores and accounts associated with these webstores, there is a strong inference is that Defendant has made much more infringing sales than it claimed to have made.

The list of the webstores found by Plaintiff is shown below. Also see Exhibit 3[2].

https://www.channaldecor.com
https://shop.ctoy.com.cn/channal/
http://qnqmchen.cn.trustexporter.com
http://cn.ttfly.com/com/gzqyn/introduce/
http://fengqnqm.cn.globalimporter.net
https://www.1688.com/factory/qnqm.html
http://cn.ttfly.com/com/gzqyn/
http://chenjing9.shsurong.net
http://channal6888.shanzhidiantea.com/introduce/
http://kenny321.dayinmao.com
http://chenjing9.txhsyj.com/introduce/
https://tc.diytrade.com/china/manufacturer/1526542/main/廣州全優能氣模有限公司.html

**D. If the Court Grants Defendant's Request for Bond, the Amount Restrained Should be Substantially Larger than Requested.**

A bond of $4,000 is insufficient to remedy Plaintiff's damages. In lieu of an asset freeze, Defendant BIGJOYS requests that the court allow it to deposit a bond of $4,000. As with the asset freeze, this bond would be used to pay out any damages awarded to Plaintiff as a result of this case. Further, since Seasonblows.com's funds are insufficient to pay the damages amount with close to $0 restrained, the damages may be paid from BIGJOYS' funds. $4,000 is insufficient to pay even BIGJOYS' potential damages, let alone the damages of both defendants. BIGJOYS

---

[2] Due to lack of information and limited time constraint, Plaintiff is unable to find a translator to translate all the websites. Plaintiff highlighted Defendant's name on each of the page screenshot. Moreover, https://www.channaldecor.com is in English and shows Defendant's sales of inflatable toys.

admits that its revenue from selling the Infringing Products is $40,794.28, Docket No. 40-1 at 8, arising from the sale of 378 units at either $99.99 or $129.99 per unit. Docket No. 40-2 at 24. Conversely, Defendants claim that the infringing product listed on Seasonblows.com has had a total of 0 sales. It would be unreasonable to believe that a product with almost 400 sales on Amazon has not had a single sale on an independent website. There is a high probably that Defendants have falsely reported the number of sales on Seasonblows.com in an effort to limit the damages amount awarded in this case, as is shown by Defendant's bad faith hiding of at least another 12 webstores in violation of the Expedited Discovery Order and the Injunction Order.

Plaintiff has no means by which to determine the full extent of Defendant's infringement, and so requests that if this Court should allow Defendants to deposit a bond, it be in the amount of $500,000 to adequately insure against the indeterminable amount of damages accrued in this case.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests the Court to strike Defendants' submission of Exhibit B and Exhibit C contained in Dkt. 40-2, deny Defendants' motion to dissolve or modify the preliminary injunction.

Date: June 28, 2024

Respectfully Submitted,

By: /s/ Shengmao Mu
Shengmao (Sam) Mu, NY #5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

12