**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DELTA TECHNOLOGY DEVELOPMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>BIGJOYS and SEASONBLOWS.COM,<br><br>Defendants. | ) | No. 24 C 2406<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Delta Technology Development LLC ("Delta") sued Defendants BIGJOYS and Seasonblows.com for violating the Copyright Act, 17 U.S.C. § 101 *et seq.*, by selling products online that allegedly violated two of Delta's copyrights. The Court granted Delta an *ex parte* temporary restraining order ("TRO") on March 28, 2024, *see* Doc. 17, which it converted into an *ex parte* preliminary injunction on April 4, 2024, upon Delta's motion, *see* Doc. 29. As part of the TRO and preliminary injunction, the Court ordered Amazon, the platform through which BIGJOYS sold the allegedly infringing products, to freeze all of Defendants' assets under its control.[1] Now, Defendants move the Court to dissolve the preliminary injunction—claiming that Delta lacks valid copyrights over the allegedly infringed works—or, in the alternative, to reduce the asset freeze because the amount of assets frozen exceeds Delta's potential equitable recovery. However, because Delta indeed possesses valid copyrights and Defendants' evidence is either inadmissible or insufficient, the Court denies their motion in its entirety.

[1] Although Seasonblows.com listed an allegedly infringing product for sale online, it never made any sales.

## BACKGROUND

### I. Evidentiary Disputes

Before the Court recites the relevant facts, it must resolve a handful of challenges the parties levied against each other's respective exhibits.

First, Defendants challenge Delta's submission of an email from their counsel describing the total amount of revenue each party has earned since their respective launch dates, which Delta submitted as Exhibit 2. *See* Doc. 41-3. Defendants' counsel prefaced the figures with a statement that Defendants "disclose[] the [data] under [Federal] Rule [of Evidence] 408." *Id.* at 2. Defendants' counsel concluded the email with a request that Delta's counsel "let [him] know if [Delta] is able to make a settlement demand." *Id.* Delta relied on the email to argue in its brief that "Defendants at one time admitted that [they] made over $7 million infringing sales on Amazon and $11,518.29 on [their] Shopify website." Doc. 41 at 9.

Federal Rule of Evidence 408 states that a party's "conduct or a statement made during compromise negotiations about the claim" is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach [a witness] by a prior inconsistent statement or a contradiction." Rule 408 unambiguously precludes the Court from considering Delta's Exhibit 2. Defendants' counsel clearly sent the email under circumstances resembling settlement negotiations: aside from stating that he was providing the information pursuant to Rule 408, he ended the email by asking for Delta's settlement demand. Although Rule 408 would allow Delta to use the email to "prov[e] a witness's bias or prejudice [or] negat[e] a contention of undue delay," Fed. R. Evid. 408(b), Delta instead introduces it to prove that Defendants made significantly more revenue from allegedly infringing sales than they admit to in Defendants' owner's declaration. *Compare* Doc. 41-3 at 2 (disclosing sales from BIGJOYS in excess of $7.1

million and sales from Seasonblows.com in excess of $11,500), *with* Doc. 40-2 at 2, ¶¶ 12–13 (declaring that BIGJOYS derived $40,794.28 in allegedly infringing sales and Seasonblows.com sold no allegedly infringing products). This is the precise evidentiary purpose that Rule 408 forbids, so the Court will not consider Delta's Exhibit 2 in ruling on this motion. *See Cent. Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982) ("The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability.").

For its part, Delta challenges Defendants' reliance on two exhibits to Leilin Liu's, Defendants' owner's, original declarations, Exhibits B and C, because they are both in a foreign language with no accompanying translation. *See* Doc. 40-2 at 24 (Exhibit B); *id.* at 25 (Exhibit C). According to Liu's declaration, Exhibit B is a screenshot of a website that purports to show the amount of revenue BIGJOYS and Seasonblows.com respectively derived from allegedly infringing sales, and Exhibit C purports to show the amount of BIGJOYS' assets currently frozen on the Amazon platform. Defendants attempt to cure the alleged deficiency in Liu's second declaration by providing exhibits obtained "after changing the language of the website to English." Doc. 42-1 at 1, ¶ 5; *see id.* at 5 (attaching uncertified English translation of Liu's original Exhibit B); *id.* at 7 (attaching uncertified English translation of updated version of Exhibit C).

It is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Heredia v. Americare, Inc.*, No. 17 C 6219, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020). This includes "translations of a Chinese-language website" that use a "web browser's automatic translation service," particularly when there "is no indication that anyone with knowledge of the Chinese language

reviewed the computer-generated translations" of the documents. *ABC Corp. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 22 C 7079, 2022 WL 18937941, at *1 (N.D. Ill. Dec. 19, 2022).

By Liu's admission, he obtained English-language translations of the screenshots he submitted as exhibits to his first declaration by using a "web browser's automatic translation service." *Id.* Those exhibits are therefore inadmissible for lack of "a certified English translation." *Heredia*, 2020 WL 3961618, at *5. The Court will therefore not consider Exhibits B and C to Liu's first declaration, and has decided *sua sponte* that it will not consider Exhibits A, B, or C to Liu's second declaration because they are either uncertified translations of foreign-language documents (Exhibits A and C) or in a foreign language (Exhibit B).[2]

## II. Relevant Facts

Delta is a design company that creates and sells inflatable lawn ornaments. It created the drawings and model ("the Works") for the inflatables at issue in this case in 2022. Delta obtained Certificate of Registration VAu 1-513-589 from the United States Copyright Office ("USCO") for the drawings with an effective date of December 11, 2023, and it obtained Certificate of Registration VAu 1-514-819 from the USCO for the pictures of a model inflatable with an effective date of December 15, 2023. Both Certificates of Registration list the year of completion as 2023, which Delta asserts is a typographical error. The drawings look like this:

[2] For the same reason, the Court will not consider pages 2–29 of Delta's Exhibit 3 because those captures of foreign-language websites lack certified English translations. *See* Doc. 41-4.






MERRY
CHRISTMAS

Doc. 6 at 3–5. An illustrative picture of the model inflatable looks like this:




*Id.* at 7.

BIGJOYS and Seasonblows.com are China-based online retailers that share Liu as a common owner. They received copies of the drawings for the inflatable from Shanghai Chengchunjun E-commerce Co., Ltd. ("Chengchunjun"), Delta's China-based business affiliate. According to Liu, Chengchunjun provided Defendants with the drawings "to manufacture two pieces of sample Products." Doc. 40-2 at 2, ¶ 9. However, after creating the samples, Defendants and Chengchunjun "did not reach a subsequent deal" to mass-produce the inflatables. *Id.* Liu said that he understood that Chengchunjun decided not to commercialize the Works. Delta did not provide Defendants with permission to create products resembling the Works, and stated in a declaration from Tico Zhan, Delta's Designer, that it plans to license the Works to other online retailers to sell inflatables. There is no evidence in the record that Delta has signed any licensing agreements to-date.

The lack of a deal did not deter Defendants from producing and selling inflatables based off the Works. They successfully produced and sold several units of the inflatables. According to the Amazon listing for the inflatable they were selling, Defendants' product looked like this:




Doc. 7 at 6. According to Liu's declarations, BIGJOYS made 378 sales on Amazon that generated a total of $40,794.28 in revenue. Seasonblows.com, however, failed to sell any goods derived from the Works. Liu estimates that BIGJOYS derived $4,045.75 in profit from these sales, due to a cost of good sold ("COGS") of $24,003.00, "FBA delivery" expenses of $3,386.88, and other miscellaneous commissions and fees. Doc. 42-1 at 2, ¶ 6. Liu does not provide business records to explain how he calculated those figures.

After the Court imposed a TRO, which it later converted into a preliminary injunction, Defendants were unable to access any assets contained in Amazon accounts. According to Liu's declaration accompanying Defendants' reply brief, BIGJOYS is currently unable to access $92,528.62 held in Amazon accounts.

## LEGAL STANDARD

Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). If the moving party meets this threshold showing, the Court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Laby's v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Although the Court has already granted Delta a preliminary injunction, it did so on an *ex parte* basis under circumstances that closely resembled a TRO, and without the benefit of adversarial briefing. Thus, Delta bears the burden of persuading the Court that it should not disturb the injunction. *See Jiaxing Zichi Trade Co. v. Yang*, No. 21 C 973, 2021 WL 4498654, at *3 n. 3 (N.D. Ill. Aug. 19, 2021) (citing 42 Am. Jur. 2d Injunctions § 291 ("[W]hen a temporary injunction is issued under circumstances resembling a temporary restraining order, the burden of proof may be on the party seeking the order.")).

**ANALYSIS**

**I. Preliminary Injunction**

Defendants argue that the Court should lift the preliminary injunction because Delta fails to satisfy any of the three elements necessary for equitable relief. Delta contends all three factors weigh in favor of leaving the order in place. The Court assesses each element in turn.

**A. Likelihood of Success on the Merits**

To win a preliminary injunction, Delta must establish that it is likely to succeed on the merits of its copyright infringement claim. *See Bevis*, 85 F.4th at 1188. To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Defendants only contend that Delta is unlikely to succeed on the merits of its claim because it cannot show "ownership of a valid copyright." *Id.* In other words, they do not dispute that they used the Works to create the allegedly infringing products. Defendants argue that they lawfully obtained copies of the designs they used to build the allegedly infringing products from a Chinese company with no relation to Delta. They further note that they obtained the designs in

2022 from Chengchunjun—not Delta—and the Certificates of Registration that Delta obtained from the USCO show that Delta created the Works in 2023, long after Defendants first obtained the designs. Defendants urge the Court to find that Delta is not the true owner of the Works, meaning Delta lacks a valid copyright and cannot succeed on the merits of its claim.

Delta responds that it did create the Works in 2022 and simply erred when filing its application for the Certificates of Registration, which it argues does not invalidate its copyrights. Delta further states that Chengchunjun is its China-based business partner, and that Delta gave Chengchunjun permission to share the Works with Defendants for them to manufacture physical products to sell. Delta also points to Liu's first declaration where he acknowledges that Chengchunjun gave him "the design drawing to manufacture two pieces of sample Products" and that he "did not reach a subsequent deal with [Chengchunjun] for mass production" of goods based on the Works as evidence that he understood his company was infringing the Works. Doc. 40-2 at 2, ¶ 9.

Delta's evidence shows that it is likely to succeed in proving that it owned valid copyrights to the Works and that Defendants infringed them. Preliminarily, Delta is correct that the error it made in registering the Works with the USCO does not invalidate its copyright protections. The Copyright Act clearly states that a copyright certificate is valid "regardless of whether the certificate contains any inaccurate information" unless the applicant included the inaccurate information "with knowledge that it was inaccurate" and the inaccuracy "would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).[3] Defendants do

[3] Although 17 U.S.C. § 411(b)(2) technically requires the Court to consult "the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration," the Seventh Circuit has "strongly caution[ed] both courts and litigants to be wary of using this [consultation] device in the future." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013). To trigger the Court's consultation obligation, Defendants must first "demonstrate that (1) the registration application included inaccurate information;

not argue or present evidence in their reply brief that Delta knowingly submitted incorrect information when it obtained its Certificates of Registration, or that Delta's copyrights are invalid for other reasons. Accordingly, because it appears at this stage that the Certificates of Registration are valid and Delta has a legitimate excuse for the incorrect information, the Court finds that Delta possesses valid copyrights over the Works. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) ("A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright." (citing 17 U.S.C. § 410(c)).

Second, for the sake of completion the Court finds that Delta's evidence shows that Defendants copied the Works. Defendants admit to obtaining the Works from Chengchunjun, which is Delta's business affiliate in China. Defendants' owner, Liu, stated that he received "the design drawing to manufacture two pieces of sample Products" and that he "did not reach a subsequent deal with [Chengchunjun] for mass production" of goods. Doc. 40-2 at 2, ¶ 9. The fact that his companies then produced and sold products resembling the Works creates a presumption of infringement. *See Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (copyright infringement may be inferred when "the defendant had access to the copyrighted work, and the accused work is substantially similar to the copyrighted work").

With both elements of the test for copyright infringement satisfied, the Court finds that Delta is likely to succeed on the merits of its claim.

---

and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *Id.* Defendants failed to submit evidence relevant to the second prong of this test—indeed, they did not address § 411(b)(2) or the consultation factors at all—so the Court finds that it need not consult with the Register of Copyrights on this matter.

### B. Irreparable Harm

While Delta is likely to succeed on the merits of its claim, it also must show that it will likely suffer irreparable harm absent an injunction. Although in copyright cases the Supreme Court "made clear that there is no . . . presumption" of irreparable harm simply by showing the defendant infringed a copyrighted work, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012), "it is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm," *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citing *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012)). "[I]f a plaintiff is more likely to win [on the merits of its case], the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364.

Defendants argue that Delta has failed to persuasively argue that it would suffer irreparable harm because it "has failed to provide any evidence that the quality of Defendants' goods is substandard, or that any consumers have been tricked into believing that they are purchasing products offered by [Delta], or that any brand confidence or reputation has actually been harmed." Doc. 40-1 at 5. But Defendants' demand for conclusive proof that Delta will certainly suffer irreparable harm asks too much of Delta at the preliminary injunction stage. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he . . . is *likely* to suffer irreparable harm[.]" (emphasis added)). Rather, it is enough for Delta to "point[] towards potential harm to goodwill, reputation, brand confidence, potential lost market share, and relinquished control of nature and quality of germane products in connection with their copyright." *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C

3289, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022). In this case, Delta has already submitted an affidavit from a designer at its company that it "has invested substantial time, money, and effort" in creating the Works and that it plans to license the Works to other online retailers to sell inflatables, meaning Defendants' continued infringement poses a risk to its future business plans. Doc. 13 ¶ 13. Although Delta's licensing plans have not yet come to fruition, BIGJOYS for its part has already sold at least 378 units of an allegedly infringing product. *See* Doc. 42-1 at 1, ¶ 5. Delta's concerns that BIGJOYS will make sales that should flow to Delta instead if the Court does not prevent it from selling additional products are therefore well-founded.

Accordingly, the Court finds that Delta is likely to face irreparable harm absent injunctive relief. *See Bevis*, 85 F.4th at 1188 (showing of irreparable harm is one of the two most important considerations for injunctive relief).

**C. Balance of Equities**

Finally, the Court considers whether the balance of equities justifies a preliminary injunction. "This involves considering the public interest and effects of the preliminary injunction on 'people and institutions that are not parties to the case.'" *Madden v. Amazon Servs., LLC*, No. 23 C 14163, 2023 WL 8827977, at *10 (N.D. Ill. Dec. 21, 2023) (quoting *Cassel v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021)).

The public "has a strong interest in 'preserving the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights.'" *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 996 F. Supp. 757, 764 (C.D. Ill. 1996) (quoting *Atari*, 672 F.2d at 620). Defendants' argument that the asset freeze the injunction imposes, which the Court discusses in greater detail below, prevents it from engaging in normal

operations does not give the Court reason to find that the *public's* interest weighs against the injunction. Accordingly, the Court finds that the balance of equities justifies injunctive relief.

Because all three elements of the test for a preliminary injunction favor Delta, the Court finds that the preliminary injunction already in place is justified and denies Defendants' motion to dissolve it.

**II. Asset Freeze**

Because the Court declines to dissolve the preliminary injunction, it now considers BIGJOYS' arguments to reduce the freeze on its assets under Amazon's control. "[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Klipsch Grp., Inc.*, 2012 WL 5265727, at *4. That said, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 7621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (alterations omitted) (internal quotation marks omitted).

According to Liu, BIGJOYS sold 378 units of the allegedly infringing product, which generated a total revenue of $40,794.28. Liu states that BIGJOYS earned $4,045.75 in profit from those sales. Liu further declares that, as of July 5, 2024, Amazon has frozen $92,528.62 pursuant to this Court's order. *See* Doc. 41-1 at 2, ¶ 9. BIGJOYS asks the Court to reduce the asset freeze to the amount of its profits from allegedly infringing sales or to lift the asset freeze in its entirety and allow it to post bond of $4,045.75.

First, the Court notes that Liu did not submit documentary evidence to support the amount of profit he claims BIGJOYS derived from the allegedly infringing sales. Liu provides no business documents or other proof to support, for example, his COGS estimate of $24,003.00, the "FBA delivery" expense of $3,386.88, or any of the other costs and deductions he claims BIGJOYS incurred. Doc. 42-1 at 2, ¶ 6. The Court cannot take Liu at his word that BIGJOYS' profit is as low as he claims. *See Monster Energy Co.*, 136 F. Supp. 3d at 910 (defendant bears the burden "to present documentary proof" in support of motion to reduce asset freeze).

Defendants cannot shoulder the documentary burden that they must carry. The Court previously excluded all of Defendants' documentary evidence attached to Liu's declarations, meaning it only has before it the figures Liu swears to in his affidavit. Even if the Court considered BIGJOYS' evidence, the Court would find it unreliable. The screenshots of Amazon's sales portal lack the information that would allow the Court to determine that those were the only sales BIGJOYS made on the platform—BIGJOYS should have obtained that evidence from a data request to Amazon itself. *See Roadget Bus. Pte. Ltd. v. The Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 24 C 607, Doc. 77 (N.D. Ill. Apr. 16, 2024) (granting motion to modify asset restraint when defendants provided data obtained from online sales platform with accompanying affidavit from employee at online sales platform explaining how the platform collected the data). And the screenshot on which Liu relies to assert that Amazon has frozen $92,528.62 of BIGJOYS' assets fails to link the negative "Account Level Reserve" balance to the value of frozen assets it claims. Doc. 42-1 at 7. Accordingly, the Court finds that BIGJOYS has failed to meet its burden to justify modifying the asset restraint. *See Monster Energy Co.*, 136 F. Supp. 3d at 910; *see also Antsy Labs, LLC*, 2022 WL 17176498, at *4 ("Because Defendants have the burden to show that

particular assets are *not* proceeds of counterfeiting, the evidence they have submitted is insufficient.”).

However, this denial is without prejudice. Should BIGJOYS compile admissible, verifiable documentary evidence that shows the amount of assets restrained is disproportionate to the amount BIGJOYS generated through allegedly infringing sales, the Court will entertain its arguments in favor of modifying the asset restraint at that time.

**CONCLUSION**

Based on the foregoing, the Court denies Defendants’ motion to dissolve the preliminary injunction or modify the asset restraint [40]. The Court encourages the parties to work together to resolve Defendants’ concerns that the asset restraint is overburdensome.

Dated: August 12, 2024

SARA L. ELLIS
United States District Judge